Andrea Marie **DELANEY**, Petitioner,

v.

The **UNIVERSITY OF HOUSTON,** Respondent.

No. D–0138.

Supreme Court of Texas.

April 29, 1992.

Rehearing Overruled July 1, 1992.

Reversed and remanded.

Doggett, J., filed concurring opinion in which Mauzy, J., joined.

Gammage, J., filed concurring opinion.

Per Curiam concurring opinion was filed.

---

A. Glenn Diddel, III, Christopher Tramonte, Houston, for petitioner.

Martha H. Allean, Norberto Flores, Dan Morales, Austin, for respondent.

## OPINION

HECHT, Justice.

Andrea Marie Delaney was raped by an armed intruder in her campus dormitory room at the University of Houston. In this action she claims damages for her injuries from the University, alleging that it breached its contract with her, breached express and implied warranties to her, was negligent, and violated the Texas Deceptive Trade Practices—Consumer Protection Act ["DTPA"], Tex.Bus. & Com.Code §§ 17.41–.63. The district court granted summary judgment for the University on the ground that all Delaney's causes of action are barred by governmental immunity because they arose out of an intentional tort. A divided court of appeals affirmed. 792 S.W.2d 733. We reverse.

The University offered no summary judgment evidence. We take the following factual assertions from the only relevant

summary judgment evidence before us, Delaney's affidavit. We consider her assertions to be true, of course, only for the purpose of reviewing the summary judgment against her.

Delaney was recruited by the University to play volleyball on a scholarship that covered her tuition, meals and housing. When she and her family expressed concern about the level of crime in the area where University housing was located, the University assured Delaney that it would provide her a safe place of residence. Relying on that assurance, Delaney enrolled at the University and signed a contract for campus housing.

During her second semester, Delaney noticed that the lock on an outside door of her dormitory was broken, and that the door was often left propped open to allow entry into the building. Fearing that unauthorized persons could easily gain access to the building through the door, Delaney and other dormitory residents repeatedly complained to the University, but to no avail; the University did not repair the lock. One night, just as Delaney had feared, an intruder entered the dormitory through the broken door, and finding Delaney in her room, he raped her at gunpoint in front of her boyfriend. The rapist was eventually apprehended, charged, convicted, and imprisoned.[1]

Delaney alleges that the University is liable for her damages because it failed to provide her a secure residence, and more specifically, because it failed to repair the broken dormitory door lock. The University moved for summary judgment, contending that as a State agency all its actions are governmental, not proprietary, and that it is immune to all Delaney's claims of liability, whether based upon contract, tort or statute, except as that immunity is waived by the Texas Tort Claims Act, Tex. Civ.Prac. & Rem.Code §§ 101.001–.063. In its motion, the University argued that the Act does not waive immunity for claims of breach of contract, breach of warranties, and DTPA violations. The motion did not

---

1. By relying entirely upon Delaney's affidavit, we are certainly not "faulting" her for it, as the concurring opinion by Justice Doggett asserts, *post,* at 62.

address whether the Act waives immunity as to Delaney's negligence claims, *see id.* at §§ 101.021–.022, arguing instead that they fell within exceptions to the waiver of immunity for claims arising from the method of providing police protection, *id.* at § 101.-055(3), claims based on actions involving discretion, *id.* at § 101.056(2), and claims arising out of intentional torts, *id.* at § 101.057(2). The district court granted summary judgment, but not on the University's motion in its entirety. Its order recited the basis for its ruling as follows:

> the Court ... hereby GRANTS the University's motion on the basis of the Court's conclusion that all of plaintiff Andrea Marie Delaney's claims, including her claims against the University for breach of contract and for tort damages as a result of the University's proprietary activities in running a dormitory, are all barred as a matter of law by Section 101.057(2) of the Texas Tort Claims Act, Section 101.001 *et seq.* of the Texas Civil Practice and Remedies Code which states that the Texas Tort Claims Act does not apply to a claim "arising out of assault, battery, false imprisonment or any other intentional tort...."

The court of appeals affirmed the district court's judgment on this same basis although, as we shall see, it addressed other arguments raised by the University. We limit our consideration to the grounds upon which summary judgment was granted and affirmed.

The lower courts appear to have been persuaded by the University's argument that if a person is intentionally injured, any cause of action asserted against a governmental entity to recover damages for those injuries is barred by immunity because of section 101.057(2) of the Tort Claims Act. This argument misconstrues section 101.-057(2) to be a prohibition of certain actions against the government. It is not. Rather, it is an exception to the limited waiver of immunity brought about by the Act. In some respects, the effect of the exception is prohibitory. Thus, if a claim is barred by immunity, but immunity is waived under sections 101.021–.022 of the Act, action is still prohibited if the claim falls within the section 101.057(2) exception. If, however, a claim is not barred by immunity, neither the waiver of immunity by the Act, nor the exceptions to that waiver, are relevant.

Delaney makes two arguments why her claims—at least her contract, warranty and DTPA claims—are not barred by immunity, wholly apart from the Tort Claims Act. One is that the University contracted to provide her safe housing and by entering into such a contract, waived immunity from liability for its breach. The University, Delaney asserts, is just as obliged to honor its contractual obligations as she is. Her other argument is that the University's actions of which she complains were proprietary, not governmental, and therefore not protected by immunity. When the University acts as a private rather than public entity, Delaney contends, it must be liable as a private entity. The University challenges both these arguments. It contends that its actions, like the State's, are always governmental and never proprietary, and that it is immune from liability for all breaches of contract, breaches of warranties and DTPA violations.

We do not address these contentions in this case. The factual record before us does not supply a sufficient predicate for either of Delaney's arguments. The only evidence that the University ever contracted with her, or made representations or warranties to her, or acted in some proprietary way, is her own affidavit, which does not establish any of these facts with certitude. The legal arguments she makes are sufficiently difficult that it would be unwise to attempt to resolve them without a firmer factual footing. More importantly, the district court did not base summary judgment on these arguments, and we are therefore not inclined to consider them in reviewing the correctness of its ruling. The court of appeals did suggest that Delaney's arguments are without merit, but its discussion of these issues is not material to its holding. The court of appeals affirmed the judgment of the district court on the ground on which it was granted, that is, that all Delaney's actions are barred by immunity because they arise out of an in-

tentional tort, rape. While we recognize that the Tort Claims Act does not apply to Delaney's contract and warranty claims, we limit our review to the holding of the court of appeals and express no view of the other matters discussed in its opinion.

 Accordingly, we assume, as the holdings of the courts below require, that Delaney's causes of action against the University are all barred by governmental immunity, but that immunity is waived by the Tort Claims Act unless her claims fall within the exception to waiver in section 101.-057(2). That exception, as already noted, does not extend the Act's waiver of immunity to claims "arising out of assault, battery, false imprisonment, or any other intentional tort". The University argues, and the court of appeals held, that however Delaney characterizes her claims, whether as contractual, tort or statutory, they arise out of her rape and therefore fall within section 101.057(2). We believe that this construction of section 101.057(2) is too expansive.

Today in a companion case, *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49 (Tex.1992), we construe the language in section 101.021 which waives governmental immunity for liability in certain circumstances if the liability "arises from the operation or use of a motor-driven vehicle or motor-driven equipment." In that context we hold:

> The phrase, "arises from", requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment. While the statute does not specify whose operation or use is necessary, the employee's, the person who suffers injury, or some third party, we think the more plausible reading is that the required operation or use is that of the employee.

*Id.* at 54. We here adopt a consistent construction of 101.057(2). We think that "arising out of" in that section, like "arises from" in section 101.021, requires a certain nexus for the provision to apply. In section 101.057(2), that nexus is between the claim and an intentional tort. In essence,

section 101.057(2) excludes from the Act's waiver of immunity claims *for* intentional torts. That section, like section 101.021, does not specify whose actions are referred to; that is, section 101.057(2) does not state whether the tortfeasor must be the governmental employee or could be a third party. As with section 101.021, we think that the more plausible reading of the provision is that the tortfeasor must be the governmental employee whose conduct is the subject of complaint. We are persuaded of this construction for two reasons.

One is that the United States Supreme Court has adopted this same view of similar language in the Federal Tort Claims Act, which excludes from the waiver of federal governmental immunity "[a]ny claim arising out of assault, battery, false imprisonment," or certain other conduct. 28 U.S.C. § 2680(h). In *Sheridan v. United States*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), plaintiffs sued the United States for damages they suffered when an intoxicated off-duty serviceman fired several rifle shots into their car. They alleged that government employees were negligent in finding the serviceman intoxicated and in possession of a rifle, and nevertheless allowing him to wander off without attempting to stop him or to summon other authorities to assist in doing so. The Court held that plaintiffs' claim was not one "arising out of" an assault or battery within the meaning of the federal statute because it arose instead out of the government's alleged negligence in allowing the incident to occur. *Id.* at 401–403, 108 S.Ct. at 2455–2456. The Court rejected the argument that "arising out of" included any claim, regardless of its nature, for injuries caused by someone's intentional tort. The Court reasoned:

> The words "any claim arising out of" an assault or battery are unquestionably broad enough to bar all claims based *entirely* on an assault or battery. The import of these words is less clear, however, when they are applied to a claim arising out of two tortious acts, one of which is an assault or battery and the other of which is a mere act of negligence.

*Id.* at 398, 108 S.Ct. at 2454. Although the Court added that the intentional tort exception could not be circumvented merely by alleging that the government was negligent in supervising the employee-tortfeasor, the claim in that case went beyond such allegations.[2]

The other reason we reach the conclusion we do is because it is more consistent with the legal principle that intentional conduct intervening between a negligent act and the result does not always vitiate liability for the negligence. In *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 550 (Tex.1985), we quoted with approval the rule stated in the RESTATEMENT (SECOND) OF TORTS § 448 (1965):

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

To read section 101.057(2) so broadly as to except from the waiver of immunity any claim, irrespective of its nature, for injuries resulting from an intentional tort, is to ignore a distinction which the law recognizes when negligent and intentional acts both contribute to the occasion of injury. The better view, we believe, is a construction of section 101.057(2) which accommodates this distinction.

The court of appeals rejected the narrower construction we give section 101.057(2) in reliance upon *Townsend v. Memorial Medical Center*, 529 S.W.2d 264 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.), and *Trevathan v. State*, 740 S.W.2d 500 (Tex.App.—Houston [1st Dist.] 1987, writ denied). Both are distinguishable from the present case. *Trevathan* did not

apply section 101.057(2) and is therefore inapposite. In *Townsend,* the court held that a petition by a patient claiming damages for being raped by a hospital orderly in an elevator which he stopped between floors failed to state a cause of action because the claim fell within section 101.-057(2). Plaintiff there asserted that the government hospital breached its contract to provide her a hygienic and secure environment and was negligent because it "failed to maintain procedures adequate to protect the patient's safety, permitted a male orderly to transfer a sedated female patient, and maintained an elevator in such a condition that it could be stopped and locked between floors without a warning device." 529 S.W.2d at 265. The latter claim, that the condition of the elevator was faulty, resembles Delaney's complaint about the door lock in this case, and the breach of contract claims in the two cases are similar. However, the rapist in *Townsend* was a governmental employee, and the claims in that case tended to focus on that employee's conduct. In the present case, the rapist was not an employee of the University, and Delaney's claims focus on the University's conduct, not the rapist's. Assuming *Townsend* was correctly decided, it is a much different case from this one.

Delaney's claims are also distinct from the rape she suffered. The University's alleged failure to repair the dormitory door lock and alleged breach of contract to provide a secure residence for Delaney are readily distinguishable from the intruder's conduct. Moreover, we do not view Delaney's claims as circumventing the Tort Claims Act. Had an intruder gained entrance to Delaney's dormitory through the broken door and injured her negligently rather than intentionally, the University could not invoke section 101.057(2) to avoid liability. We hold that it cannot do so in these circumstances either.

We reiterate that we do not determine whether Delaney's negligence claims fall within the waiver of immunity contained in

---

**2.** We do not, contrary to what JUSTICE DOGGETT's concurrence says, rely upon the views of the dissenting judge in the lower court in *Sheridan,* although the Supreme Court did cite those views at some length and with apparent approval, and did reverse the judgment of the lower court.

the Tort Claims Act, or whether her contract and statutory claims are not barred by immunity for other reasons, such as those argued by Delaney. We conclude only that the district court and court of appeals erred in rendering summary judgment against Delaney on the basis of section 101.057(2).

\* \* \* \* \* \*

The judgment of the court of appeals is reversed, and the case is remanded to the district court for further proceedings.

DOGGETT, Justice, concurring.

Oral argument in this cause was heard on November 28, *1990*. The delay in announcing the majority's opinion has been totally unnecessary and unjustified. It cannot be attributed to the complexity of the issues—this cause presents a single question for review—nor by the size of the record—we are asked to review a summary judgment transcript consisting of motions and a single three-page affidavit. Nor for that matter does the opinion suggest that the legal issue itself is a difficult one requiring extensive research and analysis— the majority relies primarily on a single writing of the United States Supreme Court that predates oral argument in this cause by two years. Only four other authorities are mentioned. A dilatory resolution of the issue presented not only disserves the litigants before us, but also breaches the public's trust in performing the duties of the judiciary in a timely and responsible manner.

In defense of this indefensible situation, it is urged that the "traditions" of this

court are more important than the people to whom it is supposed to afford justice. At 64 (per curiam). When "traditions" require a woman, who is a rape victim relying on an uncontested three-page affidavit, to wait seventeen months after argument only to be given a misleading answer, I refuse to be silent. When the "traditions" of this court cannot produce expeditious and fair resolution of litigation, they must be changed.[1]

There is no justification for why this woman's claim must take last place in the majority's priorities.[2] Though insensitive to her, the majority is hypersensitive to this writing. So grave is their concern that in an unprecedented move, the same justices in the same case feel "compelled" to issue not one but two opinions—a majority opinion and its peculiar twin, the "per curiam." They offer a standard bureaucratic response: (1) it's not really a problem; (2) it's not our fault; (3) it's classified; (4) it's always been that way; (5) take your complaint somewhere else.[3] Everyone would be better served by fewer excuses and more leadership in getting the important work of this court accomplished.

The majority's last refuge is in the Code of Judicial Conduct. In no way because of that Code are "they [not able to] ethically respond" to Andrea Delaney for what happened here. *Id.* at 58. Indeed, they conveniently disregard another Code requirement that "[a] judge should dispose promptly of the business of the court." Texas Supreme Court, Code of Judicial Conduct, Canon 3, pt. A(7). Like the majority's recent delay in another case, "jus-

---

1. The suggestion that I could have taken Justice Hecht's writing assignment away from him to obtain a more prompt resolution is made with the full knowledge of the futility of such a task. The implication that the "remarks [contained in this opinion have not been previously presented] to the Court collectively" is inaccurate. At 64.

2. Nor has she been the only victim of unreasonable delay. Already, with at least some justification, this court has received a rebuke from the United States Court of Appeals for the Fifth Circuit. *See Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 800 n. 11 (Doggett, J., concurring and dissenting). My writing today

follows my own inability to resolve this problem through administrative rules and procedures.

3. They also insist on "the spirit of professionalism" mentioned in the Texas Lawyer's Creed, at 64, forgetting that a judge should owe the public the same "diligence, candor [and] punctuality" that this Creed demands of lawyers. Texas Lawyer's Creed—A Mandate for Professionalism (adopted November 7, 1989). Moreover, the overriding obligation of the Creed is "the profession's broader duty to the legal system." My commitment is to a legal system that provides litigants a just and timely resolution of their disputes.

tice delayed [has been] justice denied." *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 538 n. 1 (Tex.1992) (Doggett, J., dissenting) (noting failure to release opinion forcing taxpayers to pay unconstitutional property taxes until the passage of several deadlines, including that for payment of taxes).

Andrea Delaney has quite simply told the court that one cause of a brutal rape was the failure of a governmental unit to repair the lock on her dormitory door, despite her repeated pleas. All we needed to decide was whether the intentional tort exception in the Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code § 101.057(2), bars a student's claims that in operating a dormitory the state was negligent, breached a contract and warranties and violated the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code §§ 17.41–.61. There has not been the slightest doubt that the court of appeals erred in giving an affirmative answer.

This very limited issue is all that is presented for our review. When the order granting summary judgment explicitly states the grounds therefor, and the underlying motion contains other independent grounds for the same relief, the summary judgment can be affirmed only on the grounds specified in the trial court's order. *See* John Hill Cayce, Jr., *Preserving Error on Appeal: A Practical Guide for Civil Appeals in Texas*, 23 St. Mary's L.J. 15, 73 n. 395, 77–78 n. 420 (1991); David Hittner & Lynne Liberato, *Summary Judgments in Texas*, 20 St. Mary's L.J. 243, 282 (1989). It is simple enough to state the one issue and proceed to answer it. Then why has it taken so long?

Perhaps because a large portion of the rather convoluted opinion is dedicated to professing what the majority *does not* decide and listing excuses for that failure. One excuse for deliberately ducking "[t]he legal arguments [Delaney] makes [is that they] are sufficiently difficult that it would be unwise to attempt to resolve them without a firmer factual footing." *Id.* at 58. Faulting Delaney for her affidavit,[4] *the only factual evidence in this summary judgment record,* the majority pollutes the waters of *Clear Creek.* It apparently loses sight of the fact that Delaney is the nonmovant, and that under previously unassailed precedent of this court, the summary judgment evidence favorable to her must be taken as true, with all doubts resolved in her favor. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Casually stating that it is simply "not inclined" to address these other issues, the majority concludes its nondiscussion by refusing to "express [any] view of the other matters discussed in [the court of appeals'] opinion." At 59. These far-ranging sidetrips are unnecessary to the disposition of this cause, unless they constitute some veiled signal to the trial court to follow the court of appeals' opinion on these other issues. The correct approach would reject any writing by the intermediate court on grounds other than the single one recited in the order granting summary judgment.

Another possible reason for the tardy release of this decision is the suggestion that it is somehow related to *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49 (Tex.1992). Any alleged symmetry or "consisten[cy]" between the majority's action in this cause and that in *LeLeaux* is entirely contrived. The legal issue presented by Ms. Delaney has nothing to do with that of Ms. LeLeaux.

No party in this action has suggested that the employment status of the rapist is of the slightest importance to the resolution of this cause. Nevertheless, the majority views this factor as decisive. Today's opinion insists that the term "governmental employee" must be read into section 101.057(2). Under the majority's writ-

4. While claiming to "rely[ ] entirely upon Delaney's affidavit," the majority in fact rejects her statement as "not supply[ing] a sufficient predicate.... The only evidence that the University ever contracted with her, or made representations or warranties to her, or acted in some proprietary way, is her own affidavit, which does not establish any of these facts with certitude." At 58.

ing, Ms. Delaney's action is barred if the state employee who was dispatched to repair the lock chose instead to rape her. On the other hand, if the state's negligence in failing to repair facilitates rape by a non-employee intruder, her action is not barred.

To justify its strange "job based" qualification to the intentional tort exception of the Texas Tort Claims Act, the majority performs rather delicate surgery on *Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). Having concluded that the key criterion in applying section 101.057(2) is whether "the tortfeasor [is a] governmental employee whose conduct is the subject of the complaint," at 59, the majority claims that "the United States Supreme Court has adopted this same view of similar language in the Federal Tort Claims Act." Both the facts and the language of *Sheridan* belie this conclusion. There the intentional tortfeasor was a governmental employee, yet the Court nonetheless permitted suit to be brought under the federal act. The critical factor was the existence of a separate act of negligence by the government that was a cause of the harm, not the employment status of the person committing the assault. The Court explicitly stated:

> [I]t would seem perverse to exonerate the Government because of the happenstance that Carr [the intentional tortfeasor] was on a federal payroll.

487 U.S. at 402, 108 S.Ct. at 2456. This view was reiterated:

> The Government's responsibility for an assault may be clear even though the identity of the assailant is unknown.

*Id.* at 402 n. 7, 108 S.Ct. at 2456 n. 7 (discussing with approval *Doe v. United States,* 838 F.2d 220 (1988)).

A careful reading of *Sheridan* proves it to be quite a different case than represent-ed in today's writing, both as to its holding and as to its claimed support for the majority's analysis. Most patently misleading is the claim that the Supreme Court believed "that the intentional tort exception could not be circumvented merely by alleging that the government was negligent in supervising the employee-tortfeasor." At 60. What the majority really does is to disregard *Sheridan* in favor of the view taken by the dissenting opinion of Chief Judge Winters in the lower court.[5] Today's opinion contrasts sharply with the actual conclusion of the United States Supreme Court, which stated in no uncertain terms that the issue of negligent supervision was not presented:

> Because Carr's employment status is irrelevant to the outcome, it is not appropriate in this case to consider whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the [Federal Tort Claims Act] for a foreseeable assault or battery by a Government employee.

487 U.S. at 403 n. 8, 108 S.Ct. at 2456 n. 8. In short, the discussion of *Sheridan* bears as little resemblance to what the United States Supreme Court actually wrote as it bears relevance to the sole issue presented here. In fact, under today's opinion, a person in the same position as Sheridan, who prevailed before the United States Supreme Court, would lose before this Texas Supreme Court.[6]

Who raped Ms. Delaney is a question raised by the majority to avoid addressing the sole question presented here. An event may have more than one proximate cause; intentional conduct and negligent conduct may combine to produce one injury. *Nixon v. Mr. Property Mgt. Co.,* 690 S.W.2d 546, 550 (Tex.1985); Restatement (Second) of Torts § 448 (1965). Nothing in the Tort

---

**5.** 487 U.S. at 397, 108 S.Ct. at 2453 ("Where no reliance is placed on negligent supervision or respondeat superior principles....") (quoting *Sheridan v. United States,* 823 F.2d 820, 824 (C.A.4 1987) (Winter, C.J., dissenting)).

**6.** The harm created by the majority's view is most apparent in their refusal to disapprove *Townsend v. Memorial Medical Ctr.,* 529 S.W.2d 264 (Tex.App.—Corpus Christi 1975, writ ref'd n.r.e.), barring a rape victim's claim under Section 101.057(2). In both that case and this one, separate acts of negligence leading to the injuries sustained were asserted. The sole distinction is the employment status of the rapist. Application of the true holding of *Sheridan* would require that *Townsend* be disapproved.

Claims Act bars an action against the state for its negligence which contributed to an injury even though the intentional conduct of a third party may have contributed to the same event.

I agree that the intentional tort exception in the Texas Tort Claims Act does not bar Delaney's claims. When a negligent act and an intentional act contribute to cause an injury, the negligent actor should not escape liability for the harm caused. This principle remains true even when the government is the negligent party and the Tort Claims Act is applicable.

I concur in the judgment but vigorously disapprove of both the majority's writing and its mishandling of this entire cause.

MAUZY, J., joins in this concurring opinion.

GAMMAGE, Justice, concurring.

I concur in the court's judgment, but I cannot join its opinion. The court's opinion, in *dictum*, suggests that the University would not be liable for its negligence if the rapist had been a university employee. The waiver of sovereign immunity of a governmental unit for negligently allowing an assault or any other intentional tort to occur should not turn on whether the actor is a governmental employee or a stranger. Such factors may bear on whether there has been negligence, but they should play no part in whether governmental immunity applies. I would decide this cause on the sole ground that the "intentional tort" exception to waiver of governmental immunity does not apply when the victim's claim is that the governmental unit negligently permitted or caused the victim to be subject to the actor's intentional conduct. Rather than struggle to distinguish it, I would expressly disapprove *Townsend.*

PER CURIAM CONCURRING OPINION

We write separately to express our disagreement with those observations in Justice Doggett's concurring opinion regarding the delay in disposing of this matter.

Certainly this case has pended longer in this Court than most of our causes. If the two concurring justices had, in lamenting this fact, addressed their remarks to the Court collectively, we would lodge no complaint. But the charges of the two concurring justices are leveled not at the Court as a body, but at the author of the Court's opinion and all who join in it. Reluctantly, we are compelled to respond.

The opinions of this Court, although generally signed by one justice, are not infrequently a collective product. *See Edgewood Indep. Sch. Dist. v. Kirby*, 804 S.W.2d 491, 501 (Tex.1991) (Doggett, J., dissenting on motion for rehearing). We all bear responsibility for both the quality and pace of our Court's work product. That truth is recognized in the internal rules governing our Court, with which Justice Doggett surely agrees. *See Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 798 (Tex.1992) (Doggett, J., dissenting). Pursuant to those rules, each of us had more than one year to assume responsibility for drafting a proposed opinion in this matter. As all nine justices agreed with the result in this case, it is unfair to assign fault for delay to some, but not other, justices.

Justice Doggett's further remarks about delay in other matters are even more unfortunate. Because the "discussions, votes, positions taken, and writings" of the Court are confidences shielded by law from contemporaneous or subsequent disclosure, Texas Code of Judicial Conduct, Canon 3(A)(6), those of us who bear these attacks cannot ethically make, and should not offer, public factual response. If such charges are true, they should be pursued in the appropriate forum provided by the Constitution and laws of the State.

Each of us was chosen by the people of Texas to pursue the common goal of justice, both in the resolution of cases brought before us and the efficient administration of the judicial branch of government. Tex. Const. art. V, §§ 3, 31. To assist in realizing our purpose, this institution, like other deliberative bodies, has developed traditions which engender mutual tolerance and respect and enable its members to work together to accomplish their required tasks.

These traditions wisely counsel civility and fairness in our opinions. As Chief Justice Warren Burger has stated:

> With passing time, I am developing a deep conviction as to the necessity for civility if we are to keep the jungle from closing in on us and taking over all that the human hand and brain has created in thousands of years by way of rational discourse and in deliberative processes....

WARREN E. BURGER, DELIVERY OF JUSTICE 173 (1990) (from remarks before the American Law Institute in 1971). In leveling accusations against members of the Court to which they cannot ethically respond, the concurring opinion assaults these traditions, violating the spirit of professionalism which we endorsed in the Texas Lawyer's Creed—A Mandate for Professionalism (adopted November 7, 1989), which states: "Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession."

If our established practices break down, the losers will be the law we are sworn to uphold and the people of Texas we are privileged to serve. Thus, while we regret filing this opinion, we regret even more the action which we feel made it necessary.