Opinion Issued July 8, 2004 
















     


In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00125-CV




CLAUDIA NAVARRO PINEDA, INDIVIDUALLY; SUSANA OREGON
NAVARRO, ADMINISTRATRIX OF THE ESTATE OF PEDRO OREGON
NAVARRO, DECEASED; ANA ISABEL LORES, AS NEXT FRIEND OF
ASHLEY OREGON-LORES, MINOR DAUGHTER OF PEDRO OREGON
NAVARRO, DECEASED; BLANCA LIDIA VIERA, AS NEXT FRIEND OF
BELINDA MARILI VIERA, MINOR DAUGHTER OF PEDRO OREGON
NAVARRO, DECEASED, Appellants

V.

CITY OF HOUSTON, Appellee




On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 02-29035




O P I N I O N 

          Claudia Navarro Pineda, individually; Susana Oregon Navarro, administratrix
of the estate of Pedro Oregon Navarro; Ana Isabel Lores, as next friend of Ashley
Oregon-Lores, minor daughter of Pedro Oregon Navarro; and Blanca Lidia Viera, as
next friend of Belinda Marili Viera, minor daughter of Pedro Oregon Navarro, 
appellants, appeal from the trial court’s granting of a plea to the jurisdiction in favor
of the City of Houston (City), appellee, based upon governmental sovereign
immunity. We affirm. 
Background
On July 11, 1998, Houston Police Officers P.A. Herrada and J.R. Willis made
a traffic stop of a vehicle occupied by Nicholas Stutes, John Stutes, and Ryan Baxter. 
Baxter was arrested for providing alcohol to minors and public intoxication. He also
admitted to drinking alcohol and purchasing and smoking crack cocaine earlier that
night. At the time, Baxter was on probation. On the way to the police station, Baxter 
offered to provide information about his claimed crack cocaine dealer, Rogelio
Navarro, the brother of the decedent, Pedro Oregon Navarro, in exchange for his
release. Herrada and Willis contacted other members of their unit, the Houston Police
Department’s (HPD) Southwest Gang Task Force. 
          Baxter subsequently provided information to the officers. Although the
officers knew they were violating HPD policy by using a probationer as an informant
without the permission of the probation authority and the supervising court, the
officers and their supervisor agreed on a plan of action in which Baxter was to
arrange a meeting to buy cocaine from Rogelio at a local restaurant. When Rogelio
failed to appear at the restaurant, Baxter traveled with the police to Rogelio’s
residence at 6711 Atwell, apartment 16. The officers then devised a plan so that they
could enter the home; Baxter was to knock on the door, and when the door opened,
Baxter was to fall down in the doorway to prevent the door from closing as the
officers rushed in. The officers’ plan did not include obtaining consent to search the
apartment. 
          When no one answered the door at Rogelio’s residence, the group dispersed. 
While Herrada and Willis were transporting Baxter to jail, Rogelio contacted Baxter
on his cell phone. Baxter set up another cocaine buy. 
          Officers Herrada and Willis, together with Officers Barrera, Tillery, Perkins, 
and the gang task force supervisor, Sergeant Strouse, reassembled and went with
Baxter to Rogelio’s apartment again. While Baxter knocked on the door, the officers
waited by a column at the foot of the stairs, and initiated their plan of action. 
Without consent and without a search warrant, the officers entered Rogelio’s
apartment.
          There were several people in the apartment, including Rogelio Navarro and
Pedro Oregon Navarro. As the officers moved further into the apartment, and into the
back room occupied by Pedro Oregon Navarro, Officer Barrera accidently shot
Officer Tillery in the back. This shooting was followed by a fusillade of over 30
rounds of ammunition from the officers, killing Pedro Oregon Navarro. The other
occupants of the apartment were arrested. A subsequent search of the apartment
failed to find drugs, but did find a handgun close to Pedro’s body. An autopsy
performed on Pedro’s body showed that no drugs were in his system. 
          The HPD’s Internal Affairs Division investigated the incident. The division
concluded that Officers Strouse, Tillery, Barrera, Willis, Herrada, and Perkins had
violated several of HPD’s General Orders, resulting in their termination by the HPD.


 
A grand jury, however, failed to find a bill of indictment for murder against the
officers. 
          Appellants filed suit in federal court against the City of Houston pursuant to
42 United States Code section 1983; they included supplemental state law claims
under the Texas Wrongful Death Act


 and the Texas Tort Claims Act.


 The federal
district court granted summary judgment to the City on the section 1983 claims and
dismissed the state law claims with prejudice. Pineda v. City of Houston, 124 F.
Supp.2d 1057, 1089-90 (S.D. Tex. 2000). On appeal, the Fifth Circuit affirmed the
district court’s rendition of summary judgment, but modified the court’s order
dismissing the state claims to provide that the dismissal of the state law claims was
without prejudice. See Pineda v. City of Houston, 291 F.3d 325, 335-36 (5th Cir.
2002). 
          On June 7, 2002, appellants filed suit in state court against the City, alleging
their claims under the Texas Tort Claims Act and the Texas Wrongful Death Act. On
December 9, 2002, the City filed a plea to the jurisdiction. The trial court conducted
a hearing on the plea to the jurisdiction on December 20, 2002, and, on January 8,
2003, the trial court signed an order granting the City’s plea and dismissing the case
for want of subject matter jurisdiction. This appeal followed.
Discussion
          In their sole issue presented, appellants challenge the trial court’s granting of
the City’s plea to the jurisdiction, based on the doctrine of sovereign immunity, and
its dismissal of their claims.Standard of Review
          A plea to the jurisdiction challenges the trial court’s subject matter jurisdiction
to hear the case. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). 
Subject matter jurisdiction is essential to the authority of a court to decide a case and
is never presumed. Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443-44 (Tex. 1993). The plaintiff has the burden to allege facts affirmatively
demonstrating that the trial court has subject matter jurisdiction. Id. at 446;
Richardson v. First Nat’l Life Ins. Co., 419 S.W.2d 836, 839 (Tex. 1967). 
          The existence of subject-matter jurisdiction is a question of law. State Dep’t
of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002); Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). Therefore, we review de
novo the trial court’s ruling on a plea to the jurisdiction. Id. In deciding a plea to the
jurisdiction, a court may not consider the merits of the case, but only the plaintiff’s
pleadings and the evidence pertinent to the jurisdictional inquiry. County of Cameron
v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). 
Immunity
          Under the doctrine of sovereign immunity, a governmental entity cannot be
held liable for the actions of its employees unless there is a constitutional or statutory
provision waiving such immunity. See City of Amarillo v. Martin, 971 S.W.2d 426,
427 (Tex. 1998). Sovereign immunity can be waived only through the use of clear
and unambiguous language. County of Cameron, 80 S.W.3d at 554; Univ. of Tex.
Med. Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994); City of Houston v. Rushing,
7 S.W.3d 909, 914 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). The Texas
Legislature enacted the Texas Tort Claims Act (TTCA) to waive sovereign immunity
in certain limited circumstances. See Dallas County Mental Health & Mental
Retardation v. Bossley, 968 S.W.2d 339, 343 (Tex. 1998). The TTCA provides:
          A governmental unit in the state is liable for:
 
(1) property damage, personal injury, and death
proximately caused by the wrongful act or omission or the
negligence of an employee acting within his scope of
employment if:
 
(A) the property damage, personal injury, or death arises
from the operation or use of a motor-driven vehicle or
motor-driven equipment; and
 
(B) the employee would be personally liable to the
claimant according to Texas law; and 
 
(2) personal injury and death so caused by a condition or
use of tangible personal or real property if the
governmental unit would, were it a private person, be liable
to the claimant according to Texas law. 

Tex. Civ. Prac. & Rem. Code Ann. § 101.021. A city, such as Houston, as a
political subdivision of the State, falls within the parameters of the TTCA. See Tex.
Civ. Prac. & Rem. Code Ann. § 101.001(3)(B) (Vernon Supp 2004). 
          For a governmental entity such as the City to be held liable for the acts of its
employee under the TTCA: (1) the claim must arise under one of the three specific
areas of liability listed in section 101.021 (property damage, personal injury, and
death); and (2) the claim must not fall within an exception to the waiver of sovereign
immunity. See Scott v. Prairie View A & M Univ., 7 S.W.3d 717, 719(Tex.
App.—Houston [1st Dist.] 1999 pet. denied); City of Hempstead v. Kmiec, 902
S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ). The applicable
exceptions to the waiver of sovereign immunity are found in section 101.057 of the
Texas Civil Practice and Remedies Code, which provides:
This chapter [waiving sovereign immunity] does not apply
to a claim:
 
(1) based on an injury or death connected with any act or
omission arising out of civil disobedience, riot,
insurrection, or rebellion; or
 
(2) arising out of assault, battery, false imprisonment, or
any other intentional tort, including a tort involving
disciplinary action by school authorities. 

Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (Vernon 1997). Thus, a governmental
entity does not waive its sovereign immunity to a party’s claim for personal injury or
death if that claim arises out of an intentional tort. 
          Parties’ Contentions
          In their petitions, appellants alleged that the court “has jurisdiction over this
claim under the Texas Tort Claims Act because the Texas Legislature waived
Defendant City of Houston’s sovereign immunity for claims involving personal injury
and death caused by the negligent use of tangible personal property, if the defendant
would, were it a private citizen, be liable to Plaintiffs according to Texas law.” They
claimed that Officers Barrera and Perkins, who were at all times acting within the
course and scope of their employment with the City of Houston, and had a duty to
exercise ordinary care and use their firearms reasonably and prudently, were negligent
in using their service firearms, and that this negligence was a proximate cause of their
damages and Pedro’s death. 
          In its plea to the jurisdiction, the City alleged, first, that appellants failed to
circumvent the intentional tort exclusion of the TTCA, section 101.057(2). The City
alleged, second, that even if the officers’ acts were not intentional torts, the waiver
of immunity under section 101.021(2) of the TTCA for personal injury and death
caused by the negligent use of personal property is inapplicable to waive the City’s
immunity for the officers’ acts because the officers’ acts were not within the scope
of their employment. Finally, the City contended that, even if the officers’ acts were
within the scope of their employment, they were discretionary acts for which the
officers enjoyed official immunity, and therefore the City could not be derivatively
liable. DeWitt v. Harris County, 904 S.W.2d 650, 653 (Tex. 1995).


 
          The first question for this Court, therefore, is whether Pedro’s death was
proximately caused by the officers’ intentional torts or by their negligence.
          Intentional Tort Exclusion
          While the TTCA waives the sovereign immunity of a governmental entity for
personal injury and death arising out of the use of tangible personal property, it
specifically excludes waiver of immunity for a claim “arising out of assault, battery,
false imprisonment, or any other intentional tort.” See Tex. Civ. Prac. & Rem. Code
Ann. §§ 101.021(2), 101.057(2). Here, the City claims that it has immunity because
the officers’ actions were intentional and appellants have failed to circumvent the
intentional tort exclusion. Appellants, on the other hand, contend that the intentional
tort exception does not apply because Pedro’s death was proximately caused by the
officers’ negligent performance of their official duties. 
          Appellants contend that Officer Barrera’s initial negligent discharge of his
firearm, accidentally shooting Officer Tillery in the back, resulted in several false
impressions


 that resulted in the officers’ intentional shooting and killing of Pedro. 
Citing Delaney v. University of Houston, 835 S.W.2d 56, 60 (Tex. 1992), appellants
claim that section 101.057(2), the intentional tort exception, cannot be read so
broadly as to except from the waiver of immunity any claim for injuries resulting
from an intentional tort when negligent and intentional acts both contribute to the
occasion of injury. 
          In Delaney, the Texas Supreme Court held that a negligence action by a rape
victim against a state university was not barred by sovereign immunity where the
plaintiff’s cause of action was based on the university’s alleged failure to provide her
a secure residence and to fix a broken lock. The Supreme Court noted that section
101.057(2) of the TTCA precludes the extension of the TTCA’s waiver of immunity
to claims “arising out of assault, battery, false imprisonment, or any other intentional
tort.” Id. at 59. However, it stated that the phrase “arising out of” in section
101.057(2) requires a certain nexus for the provision to apply; that nexus is between
the claim and an intentional tort, and the intentional tortfeasor must be the
governmental employee whose conduct is the subject of complaint. Id. at 59. In that
case, the intentional tortfeasor, the rapist, was not the governmental employee whose
conduct was the subject of Delaney’s claims against the university.
          Here, the gravamen of appellants’ claim is that City of Houston police officers
wrongfully killed Pedro Oregon Navarro. Thus, in contrast to Delaney, the
tortfeasors are the governmental employees whose conduct is the subject of the
complaint, thereby satisfying section 101.057(2)’s requirement of a nexus between
appellants’ claims against the City and the intentional tort. If a plaintiff pleads facts
which amount to an intentional tort, no matter if the claim is framed as negligence,
the claim generally is for an intentional tort and is barred by the TTCA. See Tex.
Dep’t of Pub. Safety v. Petta, 44 S.W.3d 575, 580 (Tex. 2001); City of Laredo v.
Nuno, 94 S.W.3d 786, 789 (Tex. App.—San Antonio 2002, no pet.); Tarrant County
Hosp. Dist. v. Henry, 52 S.W.3d 434, 450 (Tex. App.—Fort Worth 2001, no pet.);
Medrano v. City of Pearsall, 989 S.W.2d 141, 144 (Tex. App.—San Antonio 1999,
no pet.). A plaintiff cannot circumvent the intentional tort exception by couching his
claims in terms of negligence. See Huong v. City of Port Arthur, 961 F. Supp. 1003,
1008-09 (E.D. Tex. 1997) (plaintiffs cannot circumvent intentional tort exception to
waiver of liability by simply pleading negligence when shooting event upon which
they base their claims is actually intentional tort); Petta, 44 S.W.3d at 580 (plaintiff’s
claim that officer was negligent in ignoring police procedure did not obviate fact that
conduct was intentional; conduct complained of—officers’ hitting car window,
aiming gun, blocking car in with police cruiser, and firing at car’s tires—was clearly
intentional; despite plaintiff’s claim that injuries were proximately caused by officer’s
and department’s negligence, plaintiff’s allegations fit squarely within section
101.057’s exclusion); Nuno, 94 S.W.3d at 788 (despite plaintiff’s efforts to phrase
claims in terms of officer’s negligent failure to properly place plaintiff in police
vehicle and negligent indifference of other officers and city, focus of plaintiff’s
claims against city was officer’s intentional tortious acts of using excessive force to
arrest plaintiff and to illegally seize car, and was barred); Medrano, 989 S.W.2d at
144 (where focus of claim was on officers’ alleged violent and negligent beating of
handcuffed driver, intentional tort exception could not be circumvented merely by
alleging negligent hiring, negligent training, and negligent failure to train). 
          In this case, appellants alleged in their petition that the officers were negligent,
failed to exercise sound judgment, and failed to use reasonable care in operating and
using their pistols, thus killing Pedro. However, despite appellants’ efforts to phrase
their claims in terms of negligence, their focus is on the shooting of Pedro. 
Appellants do not allege negligent acts of the City, the governmental unit, except
though the doctrine of respondeat superior. Furthermore, appellants admit that “the
actual shooting of [Pedro Oregon] Navarro was not an act of negligence.” They
nevertheless contend it was a “foreseeable consequence of a single act of negligence
in Officer Barrera’s failure to handle his firearm properly.” Thus, they claim that “the
mere fact that the shooting of [Pedro Oregon] Navarro may have been intentional has
no bearing on [their] negligence claim.” 
          Despite Officer Barrera’s alleged negligence in shooting Officer Tillery, the
pleadings demonstrate that Barrera and the other officers intended to shoot Pedro
because they believed, albeit incorrectly, that he was armed and dangerous.


 
Appellants allege that, after the initial discharge, Barrera fired 16 rounds into Pedro’s
bedroom. Barrera also reloaded his gun and resumed firing at Pedro, sometimes at
point blank range, as he lay on the floor. Appellants do not allege an accidental
shooting, such as the inadvertent discharge of the pistol; nor do the pleadings indicate
that the shooting of Pedro was anything but intentional. Thus, as in most cases, the
intent to injure can be inferred from the actors’ conduct.


 Although the officers’ may
not have intended their initial actions, such as Officer Barrera’s shooting Officer
Tillery, they did intend the ultimate injury—shooting Pedro. See Reed Tool Co. v.
Copelin, 689 S.W.2d 404, 406 (Tex. 1985) (difference between negligence cause of
action and intentional tort is not whether defendant intended the acts, but whether the
defendant intended the resulting injury). Because the focus of appellants’ claims is
on the officers’ intentional tortious conduct (wrongful use of force, wrongful use of
excessive force, assault), the City’s immunity is not waived. See Nuno, 94 S.W.3d
at 789; Medrano, 989 S.W.2d at 141. 
          After looking to the jurisdictional evidence and allegations, taking them as true,
and construing them in favor of the appellants, we conclude that appellants’ petitions
do not present a claim for which immunity is waived by the TTCA. Therefore, the
trial court did not err in granting the City’s plea to the jurisdiction and dismissing
appellants’ claims for lack of jurisdiction. We overrule appellants’ sole issue. 
          Because we conclude that the City has immunity under the intentional tort
provision of the TTCA, section 101.057, we do not discuss appellants’ additional
claims. 
Conclusion
          We affirm the trial court’s order granting the City’s plea to the jurisdiction
and dismissing appellants’ claims. 
 
Evelyn V. Keyes
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes, and Bland.