Albertha **RIDEAU, et al.**

v.

**JEFFERSON COUNTY, et al.**

No. 1:94–CV–439.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 25, 1995.

Michael Essmyer, Clay T. Grover, Essmyer & Tritico, Houston, TX, for Albertha Rideau, Kathy Lee Rideau–Smith, Stephfon Lavence, Jim Rideaux, Jr., Claudette Rideau.

Thomas F. Rugg, Asst. Dist. Atty., District Attorney's Office, Jefferson County, Beaumont, TX, for Jefferson County, Texas, Jefferson County Sheriff's Department.

Daniel Troy Smith, Snyder, TX, pro se.

Mitchell Wayne Templeton, Chambers & Templeton LLP, Beaumont, TX, for Daniel Troy Smith.

### *MEMORANDUM RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

HINES, United States Magistrate Judge.

Plaintiffs Albertha Rideau, Claudette Rideau, Jim Rideaux, Jr., and Stephfon Lavence, bring this suit on behalf of themselves and their decedent, Kathy Lee Rideau–Smith. Plaintiffs allege federal civil rights

causes of action against defendants Daniel Troy Smith, Jefferson County, Texas, and "Jefferson County, Texas Sheriff's Department," for (a) deprivation of constitutional rights, pursuant to Title 42 U.S.C. § 1983, and (b) conspiracy to violate civil rights, pursuant to Title 42 U.S.C. § 1985(3). Invoking supplemental jurisdiction, plaintiffs further allege state law claims of negligence, assault, battery, and wrongful death.

The parties have consented to disposition of this case by the undersigned United States Magistrate Judge. *See* 28 U.S.C. § 636(c)(1). The matter was referred to the undersigned to conduct all proceedings and enter judgment. *See* Order of Reference (December 9, 1994).

## I. Background

Daniel Troy Smith ("Smith") and Kathy Lee Rideau–Smith ("Rideau–Smith") married in April of 1987. Eight months later, the Jefferson County, Texas, sheriff employed defendant Smith as a deputy. The couple divorced in 1989.[1]

On July 20, 1992, Rideau–Smith reported to Jefferson County Deputy Chief Kenneth Duhon that Smith had parked his patrol car outside her home. She complained of inappropriate surveillance of her home by Smith, investigation of her friends' automobile license plates, and an incident in which Smith detained her in his patrol car. Duhon transferred the complaint to Major John Cascio of the Internal Affairs Unit.[2]

An appointment between Cascio and Rideau–Smith was scheduled in Cascio's office for four o'clock in the afternoon that day. Also on the same day, Rideau–Smith's neighbor notified the sheriff's dispatcher that there was a patrol car again parked on their street, in front of Rideau–Smith's house.[3]

Rideau–Smith drove to the Jefferson County Courthouse to meet with Cascio at four o'clock. As she approached the building, accompanied by her mother, sixteen-year-old sister, and seven-year-old nephew, Smith appeared, dressed in his deputy uniform. Words were exchanged. Ultimately, Smith pulled his 9 mm service revolver from its holster and fired several shots at close range. Kathy Rideau–Smith was killed.

Smith then entered the courthouse and either surrendered or was apprehended without a struggle by authorities.[4] He was charged with murder. A jury convicted him, and he was sentenced to twenty years' imprisonment.[5] *State v. Smith,* No. 93–CR–250–D (105th Dist.1993).

## II. The Motion for Summary Judgment

Defendants "Jefferson County Sheriff's Department" and Jefferson County jointly move for summary judgment. "Jefferson County Sheriff's Department" argues that it is not a legal entity capable of being sued and, therefore, suit may not be maintained against it.

Jefferson County contends plaintiffs cannot assert a cause of action for conspiracy to violate civil rights because (1) a corporate entity cannot conspire with itself or its agent; and (2) plaintiffs cannot demonstrate the alleged conspiratorial acts were motivated by class-based animus, as required by 42 U.S.C. § 1985.

In addition, the county asserts there is no evidence to sustain a finding of inadequate supervision or training, given the length of time its officers are required to participate in training activities. The county also argues that Smith did not implement, but rather violated county policy. As a result, the claims brought pursuant to Title 42 U.S.C. § 1983 must fail.

Lastly, the county argues that it is statutorily immune from plaintiffs' state law claims.

---

**1.** Defendant's Motion for Summary Judgment, Exhibit A, Trial Transcript of Daniel Troy Smith at 279, 288 [hereinafter "Motion"].

**2.** Plaintiffs' Response to Motion for Summary Judgement, Exhibit A, Deposition Transcript of Kenneth A. Duhon at 38–50 [hereinafter "Response"].

**3.** Response, Exhibit C, Affidavit of Lynn Rogers.

**4.** *See* Motion, Exhibit A, Trial Testimony of Daniel Troy Smith.

**5.** Motion, Exhibit A, Trial Testimony of Daniel Troy Smith.

### III. Analytical Standards

Federal Rule of Civil Procedure 56(c) states that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221–23 (5th Cir.1985). In deciding a motion for summary judgment, the court must make a threshold inquiry in determining whether there is a need for trial due to the presence of questions more suited for resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Because summary judgment is a final adjudication on the merits, courts must employ this device cautiously. *Jackson v. Procunier,* 789 F.2d 307 (5th Cir.1986).

### IV. Discussion and Analysis

#### A. Claims Against "Jefferson County Sheriff's Department"

Defendant "Jefferson County Sheriff's Department" moves for summary judgment and argues it is not a legal entity capable of being sued.

■ The United States Court of Appeals for the Fifth Circuit has determined that police and sheriff's departments are governmental subdivisions without capacity for independent legal action. *Darby v. Pasadena Police Dep't,* 939 F.2d 311 (5th Cir. 1991); *Alcala v. Dallas County Sheriff,* 988 F.2d 1210 (5th Cir.1993). If a governmental subdivision does not have the capacity for

independent legal action, it is incapable of being joined as a defendant. *Darby,* 939 F.2d at 313. As a matter of law, then, the moving "party" is entitled to judgment.[6]

#### B. Section 1985 Claim Against Jefferson County

Title 42 U.S.C. § 1985(3) states, in relevant part:

> If two or more persons in any State or Territory conspire, ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against one or more of the conspirators.

42 U.S.C. § 1985(3).

Plaintiffs argue that defendants engaged in a conspiracy against women: "Defendants followed a custom or practice of failing to follow their established policies and procedures for handling domestic violence complaints when the complaint involves a deputy sheriff. Such a custom necessarily discriminates against women." Response at 11.

Defendant County's motion for summary judgment contends plaintiffs cannot pursue a cause of action for conspiracy to violate civil rights because (1) plaintiffs cannot demonstrate the alleged conspiratorial acts were motivated by class-based animus, as required by Title 42 U.S.C. § 1985; and (2) a corporate entity cannot conspire with itself or its agent.

#### 1. Class-based Animus

Title 42 U.S.C. § 1985(3) is part of The Civil Rights Act of 1871, popularly known as

---

**6.** The proper remedy for naming a party without legal capacity for suit is to permit amendment of the complaint so the correct defendant may be named. *See Darby,* 939 F.2d at 314. *See also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Guidry v. Jefferson County Detention Center,* 868 F.Supp. 189 (E.D.Tex.1994) (county is correct defendant when plaintiff sues county operated detention center). Because plaintiffs already have named Jefferson County, Texas as a defendant, another amendment would be both time-consuming and fruitless.

the Ku Klux Klan Act.[7] It is one of the Reconstruction civil rights statutes enacted to protect Negroes and political factions sympathetic to Negroes. Thus, the Supreme Court held in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), that Section 1985(3) is not a general federal tort law applicable to all conspiratorial interferences with rights of others. Instead, endeavors of conspirators acting to deprive persons of their civil rights must be motivated by a "class-based, invidiously discriminatory animus." *Id.* at 102, 91 S.Ct. at 1798. *Griffin* established that the animus may be "racial, or perhaps otherwise class-based." *Id.* at 102, 91 S.Ct. at 1798. The Court intimated—through its use of the term "invidiously discriminatory"—that the outer bounds of protection offered by § 1985(3) consists of those classes for whom the Court invokes heightened scrutiny under the Fourteenth Amendment. However, it expressly declined to decide the issue of exactly which groups, if any, other than racial, would qualify. *Id.* at 102 n. 9, 91 S.Ct. at 1798 n. 9.

■ The Fifth Circuit construes the statute to protect two types of classes: "1) those characterized by 'some inherited or immutable characteristic;' and 2) those characterized by 'political beliefs or associations.'" *McLean v. International Harvester Co.,* 817 F.2d 1214, 1218 (5th Cir.1987) (citing *Kimble v. D.J. McDuffy, Inc.,* 623 F.2d 1060, 1066 (5th Cir.1980), *vacated,* 648 F.2d 340 (5th Cir.) (en banc), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981)).

Other courts of appeals hold that religious preference and gender constitute protected classes for purposes of § 1985(3). As to religious preference, *see, e.g., Colombrito v. Kelly,* 764 F.2d 122, 130–31 (2d Cir.1985); *Taylor v. Gilmartin,* 686 F.2d 1346, 1357–58 (10th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). As to gender, *see, e.g., Life Ins. Co. of North America v. Reichardt,* 591 F.2d 499 (9th Cir.1979); *Conroy v. Conroy,* 575 F.2d 175 (8th Cir.1978).

However, in *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, ——, 113 S.Ct.

753, 758, 122 L.Ed.2d 34 (1993), the Supreme Court declined to decide whether women constitute a protected class for purposes of section 1985. The Court, however, expressly *rejected* the contention that "women seeking abortion" were a class "for purposes of *Griffin's* speculative extension of § 1985(3) beyond race." *Id.* at ——, 113 S.Ct. at 759. "As Justice Blackmun has cogently put it, the class 'cannot be defined simply as a group of victims of the tortious action.'" *Id.* (quoting *Scott,* 463 U.S. at 850, 103 S.Ct. at 3367 (Blackmun, J., dissenting)).

■ Here, the court need not decide whether women constitute a protected class for purposes of § 1985(3). Plaintiffs have not alleged facts pointing to a conspiracy against women. Instead, they allege Rideau–Smith was treated differently because she reported domestic violence involving a deputy sheriff. The pleadings and facts submitted attempt to allege a conspiracy against women domestically involved with law enforcement officials rather than women in general. Even this characterization may be too broad, as a fair reading of the complaint and other matters of record suggests that the class could be further narrowed as "women seeking protection from domestic violence by law enforcement officials." In a separate section of their response to the motion, plaintiffs delineate the following:

> Jefferson County Sheriff's Department has adopted a policy or custom for responding to domestic violence complaints involving their own officers which significantly differed from official procedures. When a citizen makes a domestic violence complaint against a deputy sheriff the complaint is transferred to the Department's internal affair division.

Response at 9–10.

This alleges a much narrower class that women in general. Plaintiffs allege Rideau–Smith was the subject of a conspiracy not because of her immutable characteristic as a female, but because she sought protection from domestic violence by a deputy sheriff. Bias against women domestically involved

---

7. *See* Popular Name Table, U.S.C.A.

with law enforcement officers is analogous to bias against "women seeking abortion."

Defendant Jefferson County is entitled to summary judgment on the conspiracy claim because Rideau Smith was not the subject of an "otherwise class-based animus."

### 2. *Intra–Corporate Conspiracy*

As defendant is entitled to full relief on the first ground, it is not necessary to analyze the second prong of the motion for summary judgment.

### C. Section 1983 Claim Against Jefferson County

Title 42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1988).

Jefferson County does not contest that it is a "person" within the meaning of § 1983. Nor does it dispute that the wrongful killing of an at-liberty citizen by one acting under color of state law constitutes deprivation of rights secured by the Fourteenth Amendment. *See, e.g., Grandstaff v. City of Borger*, 767 F.2d 161, 167 (5th Cir.1985) ("[T]he Fourteenth Amendment protection against deprivation of life without due process of law is violated when police officers using deadly force, in conscious disregard of substantial risk of harm to innocent parties, kill an innocent third party."). However, the county contends it is entitled to judgment as a matter of law because (1) Daniel Troy Smith was not acting under color of state law when he killed his former wife; and (2) plaintiffs can produce no evidence to sustain a finding of inadequate supervision or training given the extensive time the county's officers are required to participate in training activities.

### 3. *Action Under Color of State Law*

■ Regarding the first ground, the county argues that the confrontation between Smith and Rideau–Smith was "purely and solely personal." Ordinarily, to act under color of state law, one must misuse power possessed by virtue of state laws and made possible only because one is clothed with the authority of state law. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The county contends that no evidence supports an inference that Smith purported to exercise governmental power. Thus, there is no evidence to support an essential element of the Section 1983 cause of action, *viz.* action under color of state law.

■ The county's "state action" argument is beside the point. Under Section 1983 jurisprudence, the doctrine of *respondeat superior* is not recognized.[8] A governmental unit cannot be held liable vicariously for acts of its employees solely on the theory of *respondeat superior*. If the county is to be liable, it will be only as a result of its own action in adopting a policy which caused deprivation of Rideau–Smith's constitutional rights. As the county will be judged on the basis of its own actions, it avails the county nothing to argue that no evidence supports the "state action" element of Smith's conduct.

### 4. *Evidence of Training*

Regarding the second ground, Jefferson County submits that its officers receive reasonable training and supervision in responding to domestic violence complaints.[9] Fur-

**8.** *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477–80, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1986); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 809–10, 105 S.Ct. 2427, 2429, 85 L.Ed.2d 791 (1985); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Lopez v. Houston Independent Sch. Dist.*, 817 F.2d 351, 353 (5th Cir.1987); *Languirand v. Hayden*, 717 F.2d 220 (5th Cir.1983).

**9.** *See* Response, Exhibit L, Jefferson County Sheriff's Department Policy & Procedure Manual.

ther, the county contends that its policy was reasonable. The county contends that Smith's *violation* of county policy, not the policy itself, is the only cause of deprivation of Rideau–Smith's constitutional rights.

■ This argument is similarly unavailing. The quantity of training county officers receive in responding to ordinary domestic violence complaints is not determinative. As noted earlier, plaintiffs contend that the county's policy for handling domestic violence complaints *against its officers* differs from the policy stated in the Jefferson County Sheriff's Department Policy and Procedure Manual. The county's summary judgment proof is insufficient to demonstrate the absence of a genuine issue of material fact on this claim.

To the extent training and supervision of county officers are at issue, the relevant analysis under governing circuit law is reported in *Brown v. Bryan County, OK.,* 53 F.3d 1410, 1418 (5th Cir.1995). The court is unable on the present record to conduct meaningful review under that analytical framework. Thus, the county's motion for summary judgment on the § 1983 claims will be denied.

## D. State Law Claims

Plaintiffs allege the following state claims against defendants:

The killing of Plaintiff [Rideau–]Smith by Defendant Daniel Troy Smith in the manner previously described violated Plaintiff's right under the Texas Constitution and constituted torts against deceased Plaintiff, including assault, battery, negligence, and wrongful death. The actions previously described constituted torts as to the remaining Plaintiffs under the bystander theory of recovery as recognized in Texas Law. Therefore, Plaintiff [Rideau–]Smith alleges all possible causes of action allowed under the Texas Torts Claims Act, Section 101.001 et seq., Texas Civil Practices [sic] and Remedies Code as well as the Texas Wrongful Death and Survival Statutes, Section 71.001 et seq., of the Texas Civil Practice and Remedies Code. Bystander Plaintiffs Albertha Rideau, Jim Rideaux, Jr., Claudette Rideau, and Stephfon Lavence, allege all possible cause [sic] of action under the Texas Torts Claims Act, Section 101.001 et seq., Texas Civil Practices and Remedies Code as well as the Texas Wrongful Death and Survival Statutes, Section 71.001 et seq., of the Texas Civil Practices and Remedies Code.

Plaintiff's First Amended Complaint at ¶ 32 [hereinafter "Complaint"].

Defendant County asserts sovereign immunity from plaintiffs' state law claims. Specifically, it argues the Texas Tort Claims Act does not waive governmental immunity for intentional acts. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.057 (Vernon 1986); *see also, e.g., Trinity River Auth. v. Williams,* 689 S.W.2d 883 (Tex.1985).

■ The county is immune from plaintiffs' pendent claims of assault and battery. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.057(2) (immunity extends to "a claim ... arising out of assault, battery ... or any other intentional tort."). Therefore, summary judgment is appropriate on these claims.

■ Plaintiffs' allegations of county negligence are not as quickly resolved. Negligence, if distinct from an intentional act ultimately causing harm, is a cognizable cause of action against an otherwise immune governmental unit. *Delaney v. University of Houston,* 835 S.W.2d 56 (Tex.1992). In *Delaney,* the Texas Supreme Court held the University of Houston was not immune from a suit arising from the rape of a college student within her dormitory. The court concluded that the plaintiff's claims against the university stemmed from the allegedly negligent failure to fix a broken door lock, through which the assailant entered the building. This, said the court, was distinct from the intentional act, the rape itself. The court found the claim could proceed because this approach "is more consistent with the legal principle that intentional conduct intervening between a negligent act and the result does not always vitiate liability for negligence." *Id.* at 60.

*Delaney* is analogous to the chain of events plaintiffs allege. The pendent claims of negligence and wrongful death do not relate to

the intentional act of Smith in assaulting Rideau–Smith, but to alleged negligence prior to the actual shooting. *See Jefferson County v. Sterk,* 830 S.W.2d 260 (Tex.App.—Beaumont 1992, writ denied) (negligent implementation of police policies transcends immunity). While plaintiffs' expansive complaint does not address the exact nature of these pendent claims, their claims against the county are for failure to "adequately supervise, discipline, and otherwise direct employees. . . ." Complaint at ¶ 25.

Although plaintiffs survive this threshold requirement, they next must show defendant's allegedly negligent conduct fell under the ambit of Section 101.021 of the Texas Civil Practice and Remedies Code, which states:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

▆▆▆ There is no suggestion this case arises from the use or operation of a motor-driven vehicle, so § 102.021(1) does not apply. Further, plaintiffs do not specifically assert in any of their pleadings or in their response that they are proceeding under § 101.021(2). To proceed under this subsection, plaintiffs must show that the injury arose from "a condition or use of tangible personal or real property." Plaintiffs bear the burden of properly alleging the existence of cause of action when a governmental assertion of immunity is involved. *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297 (Tex.1976) *Hein v. Harris County, Texas,* 557 S.W.2d 366, 366 (1st Dist.—Houston 1977). Plaintiffs do not allege any relationship between defendants and any tangible personal or real property in their complaint or summary judgment response. Rather, plaintiffs' allegations of negligence are based solely on a theory of negligent failure to supervise, direct, and discipline Smith.

Despite construing the waiver of immunity broadly where allegations of negligence exist, *see Robinson v. Central Texas MHMR Center,* 780 S.W.2d 169, 170 (Tex.1989), plaintiffs have not satisfied their burden of proof in this respect to avoid summary judgment.

### V. Conclusion

For reasons discussed *supra,* summary judgment shall be **GRANTED IN PART** and **DENIED IN PART.** The "Jefferson County Sheriff's Department" shall be **DISMISSED** as a defendant. Plaintiff's federal claims against Jefferson County pursuant to 42 U.S.C. § 1985 will be **DISMISSED.** All pendent state claims against Jefferson County shall be **DISMISSED.** The motion for summary judgment will be **DENIED** as to plaintiffs' federal claim against Jefferson County pursuant to 42 U.S.C. § 1983.