United States Court of Appeals,

Fifth Circuit.

No. 96-40604.

Regina Lynn DOWNEY, Plaintiff/Appellee, Cross/Appellant,

v.

DENTON COUNTY, TEXAS; et al., Defendants,

Denton County, Texas, Defendant/Appellant, Cross/Appellee,

and

Adorphus Bell, Misha Karakashevich, Sergeant, Weldon Lucas, Sheriff, Kirby Robinson, Sheriff, Defendants/Cross/Appellees.

Aug. 20, 1997.

Appeals from the United States District Court for the Eastern District of Texas.

Before POLITZ, Chief Judge, KING, Circuit Judge, and FOLSOM,[1] District Judge.

FOLSOM, District Judge:

While in custody of the Denton County Jail on February 24, 1994 as the result of a criminal conviction, Regina Lynn Downey (Downey) was sexually assaulted by an employee of the Denton County Sheriff's Department (Denton County). Downey sued Denton County, jail officials and employees pursuant to 42 U.S.C. § 1983 and the Texas Tort Claims Act. Downey alleged *inter alia* that Defendants violated her rights under the Eight and Fourteenth Amendments and were negligent in failing to prevent her from being assaulted while in Denton County's custody.

Downey filed a pre-trial motion for summary judgment on her

---

[1]District Judge of the Eastern District of Texas, sitting by designation.

1

claims under § 1983. The district court denied the motion and later rendered judgment for all Defendants on Downey's § 1983 claims. After a trial to the district court on the remaining claims, judgment was entered against Denton County for $100,000 and against Bell for $1,000,000 for Downey's personal injuries. The district court denied Downey's motion for additional findings of fact and conclusions of law and for partial reconsideration and amendment of judgment or, alternatively, motion for new trial. Denton County and Downey now appeal. For the following reasons, we affirm as amended.

## FACTUAL AND PROCEDURAL HISTORY

On February 24, 1991, Downey was in the custody of the Denton County Jail pending a transfer to the prison facility in Huntsville, Texas. Kim Saddler ("Saddler"), an employee of the Denton County Sheriff's Department since December, 1990, was performing her duties monitoring inmates at the facility and maintaining order. Adorphus Bell was also on duty for the Denton County Sheriff's Department but in a different unit. Leaving his post and going to the women's unit, Bell asked Saddler to remove Downey from her cell to repair a short tear in his uniform pants, a task inmates would occasionally perform for jail employees. Saddler explained to Bell that Downey was not a trustee and it was customary for trustees to repair guards' uniforms. Even though Saddler thought Bell's request was strange, she did not call her supervisor and instead woke Downey to repair Bell's uniform. Downey told Saddler to ask one of the trustees, but Saddler said

that the trustees were asleep. Saddler and Bell then escorted Downey to a room called a "multi-purpose room" that contained sewing machines inmates used to repair the uniforms of guards.

The multi-purpose room is a separate room in the Denton County Jail, access to which is controlled by a door which can be closed and locked. It contains a surveillance camera, with the monitor in the matron's room, and it is equipped with a voice-activated security device. There is a blind spot in the multi-purpose room which cannot be viewed from the observation window, but can only be viewed by one outside the room looking at a video monitor at the matron's station. When the door to the multi-purpose room is closed, the voice-activated security device is the only way for someone outside the multi-purpose room to monitor sound inside the room. On the day in question, the voice-activated security device had been disconnected and was not functioning.

Saddler remained in the multi-purpose room while Bell changed from his uniform pants into red inmate shorts in the restroom. She remained in the room for a few minutes, and then locked Bell and Downey in the room alone. Approximately fifteen minutes later, Saddler checked on Bell and Downey. At that time, Bell was sitting across from Downey as she worked on his uniform at a sewing machine. Saddler did not check on the two again until 7:30 p.m., or one hour and forty-five minutes later. During the time Bell was alone with Downey, he sexually assaulted Downey. As a result, Downey had a child. Thereafter, Bell was convicted of official

3

oppression in Denton County, Texas.[2]

Downey filed suit against Denton County as well as Bell, Saddler, Sergeant Misha Karakashevich, Sheriff Weldon Lucas, Sheriff Kirby Robinson, and Chief Deputy Dan Fletcher pursuant to 42 U.S.C. § 1983 and the Texas Tort Claims Act ("the Act").[3] Prior to a bench trial, she filed a motion for summary judgment on her § 1983 claims contending that Denton County and Bell were judicially estopped and collaterally estopped from denying § 1983 liability to Downey.[4] She also urged in her motion that the undisputed facts entitled her to summary judgment as to the claims against Denton County and Sheriff Robinson for violation of her Eighth Amendment

---

[2]Tex. Penal Code Ann. § 39.02 provides in relevant part:

(a) A public servant acting under color of his office or employment commits an offense if he:

   (3) intentionally subjects another to sexual harassment.

(b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

(c) "[S]exual harassment" means ... physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity.

[3]TEX. CIV. PRAC. & REM.CODE ANN. § 101.021.

[4]Defendants Denton County, Saddler, Sgt. Misha Karakashevich, Sheriff Weldon Lucas and Sheriff Kirby Robinson moved for Judgment on Partial Findings pursuant to Federal Rule of Civil Procedure 52(c). The district court granted the motion as a matter of law as to all Downey's claims with the exception of the claims under the Texas Tort Claims Act.

Defendant Dan Fletcher was granted summary judgment prior to trial.

4

right to be free from cruel and unusual punishment. The district court denied the motion, but during the trial, granted the motion of all Defendants but Bell for judgment on partial findings pursuant to Rule 52(c), leaving only Downey's claims under the Texas Tort Claims Act. At the conclusion of a bench trial, the district court entered judgment against Denton County and Bell.

ANALYSIS

*1. Denial of Summary Judgment § 1983*

Downey's points 1, 2 and 3 concern whether the district court abused its discretion in denying Downey's motion for summary judgment on her § 1983 claims against Bell, Denton County and Sheriff Robinson. Downey contends that Bell and Denton County were judicially and collaterally estopped from contesting her claim for cruel and unusual punishment because Bell admitted to and was charged with official oppression. Additionally, she contends that she was entitled to summary judgment for her § 1983 claims against Denton County and Sheriff Robinson on factual grounds.

We do not review the denial of the motion for summary judgment which is followed by a full trial on the merits. *Zimzores v. Veterans Admin.,* 778 F.2d 264 (5th Cir.1985). Downey's motion for summary judgment was made before trial began, and the district court orally denied the motion at trial. Faced with similar facts in *Wells v. Hico Independent School Dist.,* 736 F.2d 243 (5th Cir.1984), we stated that "[o]nce trial began, the summary judgment motion[s] effectively became moot." *Id.* at 251, n. 9. The denied motion for summary judgment does not need to be reviewed, as the

5

reviewing court is free to review the legal and factual issues on a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. Moreover, in this case, Downey does not appeal only the district court's judgment on partial findings in favor of all Defendants but Bell on her § 1983 claim, but also the district court's denial of her motion for partial reconsideration or for new trial. Declining to review the denial of summary judgment in this instance is in keeping with other decisions in this circuit and others. *See Black v. J.I. Case Co., Inc.,* 22 F.3d 568 (5th Cir.1994); *Bottineau Farmers Elevator v. Woodward-Clyde Consultants,* 963 F.2d 1064, 1068-69 n. 5 (8th Cir.1992); *Lum v. City of Honolulu,* 963 F.2d 1167, 1170 & n. 1 (9th Cir.), *cert.denied,* 506 U.S. 1022, 113 S.Ct. 659, 121 L.Ed.2d 585 (1992); and *Summit Petroleum v. Ingersoll-Rand,* 909 F.2d 862, 865 n. 4 (6th Cir.1990).

*2. Judgment on Partial Findings § 1983 claims*

Downey's point 4 concerns whether the district court erred in granting Defendants' motion for judgment on partial findings on Downey's § 1983 claim. The standard of review to be applied to this issue is set forth in *Reich v. Lancaster,* 55 F.3d 1034, 1045 (5th Cir.1995). There we stated "we will review the factual component of the district court's determination—the underlying factual findings and the inferences drawn therefrom—for clear error."[5]

---

[5]*Reich,* 55 F.3d at 1045. With regard to review of legal conclusions, we will conduct a plenary review under a *de novo* standard. *Id.*

6

In granting Defendants' Rule 52 motion, the district court found there was no evidence in the record to support a finding that the jail officials acted with deliberate indifference, an element necessary to establish liability under the Eighth Amendment against the jail officials. The Supreme Court outlined the elements of deliberate indifference in *Farmer v. Brennan.*[6]

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inferences could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer,* 114 S.Ct. at 1979, 511 U.S. at 837-38.[7] Drawing a distinction between the Eighth Amendment's outlawing cruel and unusual *punishments* and not outlawing cruel and unusual *conditions,* the Court noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while

---

[6]511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement and must take reasonable steps to insure the safety of those confined. *Farmer*, 511 U.S. at 831-33, 114 S.Ct. at 1976. The duty is violated when the deprivation alleged must be, objectively, sufficiently serious and the prison official must have a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 833-35, 114 S.Ct at 1977. Deliberate indifference to inmate health or safety is the *mens rea* necessary to establish liability in prison condition cases. *Id.; Wilson v. Seiter,* 501 U.S. 294, 302-303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991).

[7]Downey was a convicted prisoner who was awaiting transfer to another prison. As a convicted prisoner, her rights stem from the Eighth Amendment's prohibition on cruel and unusual punishment. *See, Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).Liability of jail officials to her is assessed under *Farmer.* The rights of a pretrial detainee flow from the due process guarantees of the Fourteenth Amendment, and the liability of prison officials to pre-trial detainees is assessed under *Hare v. City of Corinth, MS,* 74 F.3d 633 (5th Cir.1996).

no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.*

Downey asserts that the district court's findings that Bell sexually assaulted her supports a finding of § 1983 liability against Bell for imposing cruel and unusual punishment. She also contends that the district court's findings that Saddler left Bell alone with Downey for close to two hours, unmonitored and unsupervised, in a room whose voice-activated security device had been disconnected supports the imposition of § 1983 liability on Sheriff Robinson for negligent training and supervision.

We need not review Downey's argument as it applies to Bell as he did not answer or otherwise appear in this suit. He did not join in the joint motion for judgment on partial findings, nor did the district court grant the motion as to Bell.

With respect to the district court's finding no evidence in the record to support deliberate indifference on the part of Sheriff Robinson, we conclude the trial judge did not clearly err in his fact findings of no direct evidence that Sheriff Robinson was aware of a substantial risk of harm to Downey or that he disregarded this substantial risk. Although requisite knowledge of a substantial risk of serious harm can be demonstrated by inference from circumstantial evidence, a survey of the trial record convinces us that there is no evidence of such knowledge on the part of Sheriff Robinson, and the district court's judgment in favor of defendants was proper.

*3. Amendment of the Pre-Trial Order*

8

Downey's fifth point involves the trial judge's denying her motion to amend the pre-trial order to re-designate rebuttal witnesses as also being witnesses for her case-in-chief. During discovery, Downey failed to provide initial disclosure as provided for in the Eastern District of Texas Expense and Delay Reduction Act.[8] Upon a motion by one of the defendants, the district court ordered Downey to show cause why she should not be sanctioned for failing to provide her witness list or supplying any other discovery. Downey responded by stating that the witnesses in question were not disclosed earlier because they were rebuttal witnesses. She then listed these witnesses as rebuttal witnesses in the joint pre-trial order. At trial, Downey moved to amend the pre-trial order to redesignate the witnesses as witnesses for her case-in-chief. The trial judge denied the motion, reminding her counsel of his earlier justification for not having disclosed witnesses that the witnesses would only be rebuttal witnesses.

Downey contends that the denial of the amendment was a "death penalty" sanction and precluded her a fair trial. We review the district court's refusal to allow the amendment for an abuse of discretion. She has not pointed to anything in the record to support her contention, and under the circumstances as explained by the district court in support of its denial, there is no abuse of discretion.

## 4. Motion for Reconsideration and/or New Trial

Downey's point 6 contends the district court abused its

---

[8]Civil Justice Reform Act Plan 26(b).

discretion in denying her motion for additional findings of fact and conclusions of law and for partial reconsideration and amendment of the judgment, or alternatively, motion for new trial. She asserts that she is entitled to partial amendment of her judgment against Bell and Sheriff Robinson for her actual damages and attorneys' fees for her § 1983 claims. She also contends that the district court's denial of her motion to amend the pre-trial order to designate and present during her case-in-chief those witnesses erroneously listed in the pre-trial order as rebuttal witnesses is manifestly unjust.

Downey has failed to persuade us that the district court abused its discretion in denying these post-trial motions. We have reviewed her claims regarding the district court's findings with respect to her § 1983 claims and find the trial court not to be in error. However, we note that the judgment entered by the district court against Bell does not award Downey attorney's fees for her claims against Bell under §§ 1983 and 1988. Accordingly, the judgment, after a hearing on the amount of attorney's fees, should be amended to reflect the award. The matter is returned to the district court in order that those attorney fees may properly be made a part of the judgment.

Additionally, we have found the trial court did not abuse its discretion in refusing to allow her to amend the pre-trial order. Likewise, we do not find the trial court abused its discretion in refusing to reopen the case to consider the witnesses as part of Downey's case-in-chief. "[I]f the failure of the party to submit

10

the evidentiary materials in question is attributable solely to the negligence or carelessness of that party's attorney, then it would be an abuse of discretion for the court to reopen the case and consider the evidence." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990) *reh'g denied,* 920 F.2d 259 (1990), *cert. denied,* 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993).

*5. Texas Tort Claims Act*

Denton County asserts the district court erred in imposing liability for the negligence of Saddler, its employee, under the Texas Tort Claims Act because Texas' waiver of sovereign immunity does not extend to claims "arising out of assault, battery, false imprisonment, or any other intentional tort."[9] It contends that Downey's claim arises out of an intentional tort and is barred by the Act. Conversely, Downey maintains that the district court found a proximate cause of her injury was Saddler's negligence, thus Denton County's liability is based on Saddler's negligence, not Bell's intentional tort.

We review questions of law *de novo*. *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir.1995). Applying the substantive law of Texas, the forum state, to this pendent state law claim, we find recovery is permitted.

In deciding whether a governmental entity has waived sovereign immunity under the Act, Texas courts have considered claims involving the negligence of a government employee in connection

_____

[9]TEX. CIV. PRAC. & REM.CODE ANN. § 101.057(2).

11

with an intentional tort in *City of Waco v. Hester,*[10] *Townsend v. Memorial Medical Center,*[11] and *Delaney v. Houston.*[12] Based on these cases, Denton County contends that the Texas Tort Claims Act does not waive sovereign immunity when one employee's negligence allows another to commit an intentional tort where the intentional tort is committed by a government employee.

The plaintiff in *Townsend v. Memorial Medical Center* was a sedated patient sexually assaulted by a hospital employee in the hospital elevator. Although the plaintiff claimed the hospital was negligent in failing to prevent the assault, the court found the "gist" of the complaint was an intentional tort and barred plaintiff's claim under § 101.057(2).

While the court in *Townsend* found the plaintiff had not stated a cause of action independent of the intentional tort, the court in *City of Waco v. Hester* allowed the plaintiff's claim, finding the claim "arose out of the antecedent negligence of the city's employees."[13] In that case, the plaintiff was an inmate who was a sexually assaulted by another inmate. The plaintiff claimed the City of Waco was negligent in failing to prevent the attack. The court did not bar recovery under § 101.057(2), finding the claim was not one "arising out of" an intentional tort.

---

[10]805 S.W.2d 807 (Tex.App.—Waco 1990 writ denied).

[11]529 S.W.2d 264 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

[12]835 S.W.2d 56 (Tex.1992).

[13]*Hester,* 805 S.W.2d at 812.

12

The Texas Supreme Court discussed *Townsend* in *Delaney v. University of Houston.* There the plaintiff was assaulted by a third-party, not a University employee. The plaintiff claimed the University's negligence was a proximate cause of the assault. In finding that the plaintiff's claim against the University was not barred by the intentional torts exception to the Act, the court noted that for a claim to "arise out of" an intentional tort there must be a certain nexus between the claim and an intentional tort. "[T]he tortfeasor must be the governmental employee whose conduct is the subject of the complaint."[14] This suggests that the court looks to the conduct that is the subject of the complaint, and not the status of the tortfeasor. If a governmental employee's negligent conduct is the subject of the complaint, then § 101.057(2) will not bar recovery.

Further evidence that the Texas Supreme Court limits the "arising out of" language to claims having a nexus to the intentional tort is the court's reliance in *Delaney* on *Sheridan v. U.S.,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), a case brought under the Federal Tort Claims Act. The Federal Tort Claims Act contains language similar to the provision in question regarding excluding from the waiver of immunity claims arising out of intentional torts.[15] In *Sheridan,* plaintiffs claimed government employees were negligent in failing to take steps to prevent an

_____

[14]*Delaney,* 835 S.W.2d at 59.

[15]28 U.S.C. § 2680(h). Excluded from the waiver of federal governmental immunity is "[a]ny claim arising out of assault, battery, false imprisonment," or certain other actions.

13

off-duty serviceman from firing rifle shots into their car when they knew the serviceman was intoxicated and in possession of a rifle. In permitting recovery under the Federal Tort Claims Act, the Court held that the plaintiffs' claim was not one "arising out of" an intentional tort because "it arose instead out of the government's alleged negligence in allowing the incident to occur."[16] The Court rejected the argument that "arising out of" included any claim, regardless of its nature, for injuries caused by someone's intentional tort. The court in *Delaney* found the Court's construction of the "arising out of" language persuasive in constructing § 101.057(2) in the same manner.

We are of the opinion in the instant case that Downey's claim against Denton County for negligence is not barred by sovereign immunity because her claim did not arise out of the assault, but rather out of Saddler's negligence. Saddler's conduct was the subject of the complaint. We affirm the district court's judgment in this regard.

*6. Proximate Cause*

In its final two points, Denton County contends that the district court erred in finding that Saddler's negligence was a proximate cause of Downey's injuries and that Bell's criminal act was not foreseeable. We review the district court's findings for clear error. *Urbach v. United States,* 869 F.2d 829, 831 (5th Cir.1989).

The two elements of proximate cause under Texas law are cause

---

[16]*Id.*

14

in fact and foreseeability.  *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985).  The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury without which the harm would not have occurred. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472 (Tex.1995) *citing Prudential Ins. v. Jefferson Associates,* 896 S.W.2d 156, 161 (Tex.1995).  In the *Boys Clubs* case, plaintiffs brought suit against a boys club for damages sustained by boys sexually molested by a volunteer worker.  Proximate cause was discussed by the Texas Supreme Court in the sexual assault context, and the court noted that "[c]ause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible."[17]  Denton County contends that Saddler's actions were not the cause in fact of Downey's injuries because Saddler did no more than furnish a condition which made Downey's injury possible.

Evidence was presented that Bell left his duty post and went to the women's unit to have a tear in his uniform pants mended by a female inmate;  that he asked Saddler to remove Downey from her cell to repair his uniform;  that Saddler informed him that it was customary for trustees to repair guards' uniforms;  that Downey was not a trustee;  that Saddler thought it unusual that Bell asked for Downey;   that Saddler left Bell and Downey alone in the multi-purpose room for almost two hours without monitoring them in any fashion;  and, that the voice-activated security device had

---

[17]*Boys Clubs,* 907 S.W.2d at 477.

been disconnected, a fact that should have been obvious to Saddler. Saddler did more than furnish a condition making the injury possible—she also failed to monitor or supervise Downey and Bell, either by physically entering the multi-purpose room or by connecting the voice-activated security device. The district court's findings regarding the cause in fact aspect of proximate cause are not clearly erroneous.

Downey also contests the district court's finding that Bell's mistreatment of Downey was foreseeable. As we quoted in *Urbach,*

> Foreseeability requires that the actor, as a person of ordinary intelligence, would have anticipated the danger that his negligent act created for others.... Foreseeability does not require that a person anticipate the precise manner in which injury will occur once a negligent situation that he has created exists.

*Urbach,* 869 F.2d at 831 *quoting City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Texas 1987) and *Williams v. Steves Industries, Inc.,* 699 S.W.2d 570, 575 (Tex.1985).

The district court found in the instant case that Saddler was negligent in her use of the multi-purpose room by allowing Bell to remain locked in the room with Downey for approximately one hour and forty-five minutes without any observation or supervision; a person of ordinary prudence would not have allowed Bell to remain alone with Downey for this length of time to repair a small tear in his pants in a locked, enclosed and unmonitored room; and, Saddler's negligence was a proximate cause of Downey's injuries. Facts in the record support the district court's findings, specifically the fact that Saddler removed Downey from her cell at Bell's request, which Saddler found unusual. Saddler ordered

16

Downey to repair Bell's uniform, even though this is a task ordinarily reserved for trustees. She did not monitor the security camera in the multi-purpose room while Bell and Downey were alone, knowing the voice activated security device was disconnected.

Denton County relies on RESTATEMENT (SECOND) OF TORTS § 448 (1965) for the proposition that Bell's assault of Downey was a superseding cause that broke the chain of causation, thus precluding a finding of foreseeability on the part of Saddler. Section 448 provides:

> The acts of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Based on the evidence discussed above, the district court did not clearly err in finding that Saddler should have realized the likelihood that a situation was created wherein Bell could avail himself of the opportunity to injure or harm Downey. The record supports the district court's finding of foreseeability.

CONCLUSION

We find the trial court did not clearly err in granting Defendants' motion for judgment on partial findings on Downey's § 1983 claim. There was no abuse of discretion in the trial court's refusal to allow Downey to amend the pre-trial order to redesignate her witnesses, nor did the trial court abuse its discretion in denying Downey's motion for reconsideration and new trial. We do, however, return to the district court the issue of the amount of

17

attorney's fees to be assessed against Bell on Downey's claims under § 1983.

We find recovery under the Texas Tort Claims Act is permitted given that Downey's claim against Denton County was for negligence and not for the intentional tort committed by Bell. Likewise, the district court did not clearly err in finding that Saddler's negligence was a proximate cause of Downey's injuries. The judgment below must be affirmed as amended.[18]  AFFIRMED as AMENDED.

---

[18]Downey seeks sanctions against Denton County for bringing a frivolous appeal pursuant to Fed. R.App. P. 38 on the issue of the intentional torts exception to the Texas Tort Claims Act. Although we find that Denton County's argument lacks merit, we do not find it baseless or insupportable nor designed to delay these proceedings.