# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2015

Lyle W. Cayce
Clerk

No. 14-20710
Summary Calendar

MICHELLE HALL; DANNY HALL, Individually and as next friend of
M.S.H., a minor,

      Plaintiffs - Appellants

v.

ROBERT EMERSON ROBINSON; HARRIS COUNTY,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-3474

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

Plaintiffs-appellants, Michelle and Danny Hall (the "Halls"), individually and as next friend of M.S.H., appeal the district court's grant of summary judgment to defendants-appellees Robert Emerson Robinson ("Robinson") and Harris County (the "County") (collectively the "State"). For the reasons explained below, we AFFIRM the judgment of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20710

## FACTS AND PROCEEDINGS

Fifteen-year-old minor M.S.H. was incarcerated at the Harris County Juvenile Detention Center (the "Detention Center") on aggravated robbery charges from March 10, 2012, to May 25, 2012. She was housed on the fourth floor in a unit reserved exclusively for female detainees.

Twenty-eight-year-old Robinson, a state-certified Juvenile Supervision Officer ("JSO") employed in the Detention Center at the County's Juvenile Probation Department since 2006, was assigned to work on the fifth floor during M.S.H.'s incarceration. Not long after M.S.H.'s arrival, Robinson began unaccompanied visits to M.S.H.'s cell two to three times per week. He was granted access to M.S.H.'s cell by another employee, stationed at the control center, who triggered a mechanism that remotely controlled and unlocked cell doors.

During his visits, Robinson offered M.S.H. food and candy and described sexual acts he wanted to engage in with her. Robinson touched M.S.H.'s breasts, buttocks, and vagina on at least three occasions and wrote sexually explicit letters to M.S.H. that were delivered by another JSO.[1] Robinson raped M.S.H. on May 23, 2012.

On August 1, 2012, JSO Ruthie Coleman-Lister found and turned in a packet containing several sexually explicit letters addressed to Robinson from M.S.H.[2] Unit Supervisor Purvis Hunt delivered the envelope to Superintendent Aaron Bearsley, who immediately contacted M.S.H.'s mother, notified the Houston Police Department and the Texas Juvenile Justice

---

[1] JSO Derrick Coon delivered sexually explicit letters on Robinson's behalf. JSO Coon also made inappropriate sexual comments and advances toward M.S.H. when he delivered Robinson's letters.

[2] JSO Lister previously made JSO Sonya Ray aware of the improprieties she observed between Robinson and M.S.H. Neither JSO reported Robinson's misconduct while M.S.H. was in custody.

No. 14-20710

Division, and temporarily suspended Robinson during an internal investigation. On August 7, 2012, the investigator conducting the internal investigation concluded that Robinson's conduct "violated the TJJD [Texas Juvenile Justice Department] code of ethics," and Robinson was terminated.

According to M.S.H.'s affidavit, she reported Robinson's advances to JSO Jones prior to the discovery of the letters. Jones asked whether M.S.H. planned to report the incidents and M.S.H. responded that she did not. M.S.H. had a copy of the Detention Center's grievance procedures but did not officially report her concerns about Robinson. M.S.H. or her parents could have alerted the Harris County Juvenile Board (the "Juvenile Board") and supervisory staff of Robinson's behavior through the "Youth Grievance Process." The Youth Grievance Process provides that "[a]ll youth shall have full access to the grievance process and have the right to file a written grievance." Another policy, "Community Complaints," states that "[a] complaint may be filed by any youth, the youth's parents/guardians, or their representative . . . ." Lastly, the "Juvenile Rights" policy provides "[t]he facility shall have a written grievance procedure with at least one level of appeal" and that "[r]esidents shall not be subjected to abuse, exploitation or neglect . . . ."

On December 12, 2013, Robinson was convicted of sexual assault of a child under seventeen years of age. The Halls filed civil suit on November 28, 2012, in the Southern District of Texas. After the district court granted Robinson's motion for summary judgment on October 20, 2014, the Halls filed a timely notice of appeal on November 19, 2014.

The Halls raise two issues on appeal. First, they contend the County's immunity from suit was waived by the JSOs' negligent failure to report Robinson's behavior. Second, the Halls assert that there is a genuine issue of material fact concerning the County's failure to train and supervise Robinson.

3

**DISCUSSION**

I. Standard of Review

The court reviews the district court's grant of summary judgment de novo, with all evidence construed in the light most favorable to the non-movant. *Squyres v. Heico Cos.*, 782 F.3d 224, 230-31 (5th Cir. 2015). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). This court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013) (quotation marks omitted).

II. Failure to Report

The district court dismissed the Halls' state law claims under the Texas Tort Claims Act ("TTCA") with prejudice. The TTCA protects Texas and its municipalities from liability for the intentional torts (including assault or battery) of State employees. TEX. CIV. PRAC. & REM. CODE § 101.057. Sovereign immunity also protects the State from liability for the negligence of its officers or agents, unless there is a constitutional or statutory provision waiving immunity. *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976). The district court correctly granted summary judgment in favor of the State. We affirm.

First, this court cannot reach the merits of the Halls' negligence claim against Harris County because the issue is raised for the first time on appeal. The record contains no mention of the negligent behavior of the JSOs until the Halls' Brief on appeal. In response to the State's motion for summary judgment, the Halls claimed that County employees acted deliberately in not

4

reporting Robinson's behavior. As a general rule, this court declines to address contentions not made before the district court absent some extraordinary circumstance. *French v. Allstate Indem. Co.,* 637 F.3d 571, 582-833 (5th Cir. 2011).

Second, even if the negligence claim were raised, the Halls' failure-to-report claim does not meet the requirement for a waiver of governmental immunity. The TTCA waives the State's immunity in a limited number of circumstances, one of which is "personal injury and death so caused by a condition or use of tangible personal or real property. . . ." *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994) (quoting TEX. CIV. PRAC. & REM. CODE § 101.021). In their response to the motion for summary judgment, the Halls asserted that summary judgment was improper because there was a genuine issue of material fact as to whether the unmonitored video surveillance system and open access to M.S.H.'s cell were proximate causes of M.S.H.'s injuries. The Halls did not provide summary judgment evidence on appeal to show that M.S.H.'s injuries were proximately caused by the condition or use of tangible personal or real property. Additionally, a "guard's sexual assault is the type of intervening intentional act contemplated and referred to in the case law as an example of when sovereign immunity is not waived." *Bonham v. Tex. Dep't of Crim. Justice*, 101 S.W.3d 153, 158-59 (Tex. App. –Austin 2003, no pet.) (holding that while the layout of the prison "was part of the context" of a sexual assault, it was an "intervening" condition that made the "intentional act possible.").

Lastly, as the district court noted, the Halls alleged assault, battery, and intentional infliction of emotional distress claims were against Robinson, not the County. A signed Order issued on July 29, 2013, dismissed the Halls' claims against Robinson in his official capacity. The Halls' amended complaint alleged

assault, battery, and intentional infliction of emotional distress against Robinson, but there is no evidence in the record to suggest that Robinson was ever served with summons and a copy of the amended complaint. The affidavits of service show that defendants Thomas D. Brooks and the County received copies of the Halls' amended complaint, but Robinson did not. As such, the claims against Robinson in his personal capacity are susceptible of dismissal without prejudice. *See* Fed. R. Civ. P. 4(m). Even looking at the record in the light most favorable to the Halls, there is a lack of evidence to show that governmental immunity would have been waived had the Halls properly asserted a claim of negligence against the State.

On appeal, the Halls rely heavily on *Downey v. Denton County* to demonstrate that sovereign immunity may be waived when an employee's antecedent negligence was the proximate cause of injury. 119 F.3d 381, 387-90 (5th Cir. 1997). In *Downey*, the court found that government immunity was waived because the female employee's negligence in leaving a female inmate and male guard in a locked room unattended for almost two hours, with a disconnected voice-activated security device, was the proximate cause that allowed the male guard to sexually assault the female inmate. *Id.* at 389.

The TTCA claims in *Downey* were specifically directed at the female employee's negligence in failing to supervise and not the male guard's intentional torts, which would have been barred by sovereign immunity. *Id.* at 388. The negligence claim against the county in *Downey* also involved the condition of tangible property (the dysfunctional voice-activated security device) such that sovereign immunity was waived. *Id.* at 388-90. The case at hand is legally and factually distinguishable from *Downey* because the Halls did not raise the issue of County employees' negligence.

III. Failure to Train and Supervise

The district court dismissed the Halls' 42 U.S.C. § 1983 claims against Harris County with prejudice. It held that:

> the fact that one JSO had been accused of sexual abuse in the five years prior to Robinson's rape of M.S.H. is not proof of a pattern or widespread practice of JSOs having improper relationships with or committing sexual abuse of detainees within the Detention Center. It follows that Plaintiffs have failed to raise a genuine issue of material fact that the County or the Juvenile Board was deliberately indifferent to the proper training and supervision of JSOs employed in the Detention Center during Robinson's employment and prior to the commission of his crime against M.S.H.

Based on this view of the uncontested evidence, the district court held that the County was entitled to summary judgment. We affirm for the same reason.

Section 1983 demands a high standard of proof before imposing municipal liability. *See Synder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *see also City of Canton v. Harris*, 489 U.S. 378, 396 (1989) (O'Connor, J., concurring) ("Where a §1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, [§ 1983 is] satisfied.") A municipality may not be held liable under § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality may be held liable under §1983 if the plaintiff evinces a constitutional tort caused by action taken "pursuant to official municipal policy." *Id*. at 691. In other words, a municipality may be held liable under § 1983 when the municipality actually causes a constitutional violation through execution of an official policy or custom. *Id*. at 694-95.

No. 14-20710

The Fifth Circuit, in order to satisfy *Monell*, requires proof of "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).[3] To establish the existence of a widespread custom, of which the County policymaker knew or should have known, the plaintiff must show more than a single constitutional violation. *Piotrowski*, 237 F.3d at 581. In this case, the Juvenile Board must have had actual or constructive knowledge of the custom.

The Halls assert that the "custom" of JSOs violating official policies and procedures provides enough evidence to show that the inadequacy of JSO training or supervision was "obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quotation marks omitted). The Halls frame the idea of custom narrowly within the confines of M.S.H.'s thirty-seven day stay in the Detention Center. In contrast, the State questions whether seventeen reported incidents of JSO misconduct (only one specifically involving sexual misconduct between a JSO and inmate) filed over a five year period constitutes custom. We agree with the State that the Halls have failed both to demonstrate a widespread history of JSO misconduct and that the Juvenile Board had actual or constructive knowledge of Robinson and the other JSOs' behavior.

---

[3] An official policy is "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). An official policy may also stem from a custom created by a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy is so common and well settled" it fairly represents "municipal policy." *Id.*

It is clear from the record that the Halls' claim falls short of demonstrating municipal liability. The Halls construe the failure of JSOs to report alleged and perceived misconduct between JSO Robinson and M.S.H. as a series of events that allowed Robinson to "groom" and eventually rape M.S.H.[4] The Halls ultimately contend that these failures amount to Harris County's deliberate indifference of M.S.H.'s constitutional rights. The record suggests otherwise.

Summary judgment evidence indicates M.S.H. did not take advantage of the grievance procedures in place that would have timely signaled to the Juvenile Board a need for change in M.S.H.'s situation and the JSOs' behavior. While not dispositive, it is relevant that the Halls do not address the Youth Grievance Process and how it is consistent with deliberate indifference on appeal. Instead, the Halls argue the County's failure to train and supervise Detention Center employees demonstrates their deliberate disregard of County policies, which in turn permitted Robinson to sexually assault M.S.H.

The Halls do not point to specific deficiencies in Harris County's training or supervision policies or an insufficiency in Robinson's training. In general, the Department has a "zero tolerance policy regarding any incidents of sexual abuse," which mandates that employees shall not "maintain or give the appearance of maintaining an inappropriate relationship with a juvenile residing in a facility." Robinson, specifically, received state certification and training in compliance with TJJD standards. The Texas Juvenile Probation Commission certified Robinson as a Juvenile Detention Officer in 2006, which

---

[4] The Halls claim on appeal that the district court failed to consider the "persistent failure of multiple Harris County Juvenile Justice Center ("HCJJC") employees to adhere to Harris County policies and procedures with respect to 1) the reporting of sexual/inappropriate contact; 2) the allowance of inappropriate contact between Robinson and M.S.H.; and 3) the failure to enforce existing Harris County policies and procedures that would have prevented Robinson's sexual assault of M.S.H."

required he complete 40 hours of training. The Commission renewed his certification as a Juvenile Supervision officer once he finished 86.50 hours of training. Topics covered in these trainings include: juvenile rights, safety and security, abuse, and exploitation and neglect. Robinson received training regarding juvenile rights on eight separate occasions from 2006 to 2012. He signed a copy of the Code of Ethics, which specifies employees may not "maintain an inappropriate relationship with juveniles assigned to their caseload, supervised by the juvenile probation department, or coming under the supervision of the juvenile court." The Halls do not criticize Robinson's training or the rules, policies, and procedures implemented by the Juvenile Board concerning the treatment of juveniles in the Juvenile Probation Department's custody.

Overall, the Halls have not alleged that the failure of JSOs to report inappropriate behavior between a male JSO and female inmate is so common and well-known to the Juvenile Board, that it constitutes a custom that fairly represents official policy. Specifically, the Halls have not demonstrated that these instances of misconduct among JSOs amount to a widespread custom that should have signaled to the Juvenile Board a need for additional training and supervision. *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009) ("where prior incidents are used to prove a pattern," there must be proof of numerous similar incidents that occurred frequently and/or over a long period of time and not just a single instance). The Halls have also failed to demonstrate the alleged custom was the "moving force" that drove Robinson to rape M.S.H. Finally, the Halls have not provided sufficient evidence to show that the Juvenile Board was deliberately indifferent to the training and supervision of JSOs. Consequently, there is no genuine issue of material fact and the district court's grant of summary judgment stands.

No. 14-20710

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.